STATE OF NORTH CAROLINA
v.
MICHAEL IVER PETERSON

No. COA12-1047

Filed 16 July 2013

**1.  Appeal and Error—appealability—motion for appropriate relief—appeal by State**

The appealability of criminal judgments by the State, including trial court orders granting motions for appropriate relief, is governed by N.C.G.S. § 15A-1445 (2011), and the State in this case had the right to appeal a motion for appropriate relief that was based, in part, on newly discovered evidence. A petition for certiorari was not necessary to confer jurisdiction.

**2. Criminal Law—newly discovered evidence—new trial—standard of review**

The standard of review in a criminal case for a decision to grant a new trial based on newly discovered evidence is abuse of discretion.

**3. Criminal Law—motion for appropriate relief—newly discovered evidence—expert witness—misrepresentations of qualifications**

In a first-degree murder trial, misrepresentations by a State's witness of his qualifications as an expert in bloodstain pattern analysis met all seven requirements needed to prevail on a motion for appropriate relief based on newly discovered evidence. The agent's testimony was crucial and necessary to the jury's verdict and the order granting defendant a new trial was manifestly supported by reason.

**4. Criminal Law—motion for appropriate relief—introduction of new evidence**

The trial court did not err at a hearing on a motion for appropriate relief based on newly discovered evidence by prohibiting the State from calling expert witnesses who did not testify at defendant's original trial. The State may not try to minimize the impact of newly discovered evidence by introducing evidence not available to the jury at trial.

Appeal by the State from order entered 9 May 2012 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 24 April 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert C. Montgomery and Assistant Attorney General Derrick C. Mertz, for the State.*

*Womble Carlyle Sandridge & Rice, LLP, by James P. Cooney III, for defendant.*

HUNTER, Robert C., Judge.

The State appeals from the order granting defendant's motion for appropriate relief, vacating defendant's conviction, and granting him a new trial. On appeal, the State argues that the trial court erred by granting defendant a new trial because the evidence was cumulative,

constituted nothing more than impeachment evidence, and had no probable impact on the jury's verdict. In the alternative, the State also contends that the trial court erred by not allowing the State to ask questions or present evidence related to materiality at the motion for appropriate relief hearing. After careful review, we conclude that the evidence concerning Agent Deaver's qualifications constitutes newly discovered evidence entitling defendant to a new trial. Thus, we affirm the trial court's order.

## Background

Defendant Michael Peterson was convicted of the first degree murder of his wife Kathleen Peterson in 2003. Defendant appealed his conviction, and this Court, in *State v. Peterson*, 179 N.C. App. 437, 470, 634 S.E.2d 594, 618 (2006), a divided panel found no prejudicial error had occurred at defendant's trial. Our Supreme Court affirmed this Court's decision in *State v. Peterson*, 361 N.C. 587, 609, 652 S.E.2d 216, 231 (2007). While the vast majority of the underlying facts of defendant's case need not be discussed in order to address the issues raised in this appeal, what is undeniable is that expert witness testimony played a determinative role in the outcome of defendant's original trial. This type of testimony was particularly important due to the conflicting theories of the case presented at trial. The State contended that defendant intentionally killed Ms. Peterson by striking her repeatedly with a fireplace blowpoke, causing her to fall down a winding staircase. In contrast, defendant alleged that Ms. Peterson died as a result of an accidental fall.

One of the State's most important expert witnesses was then SBI Agent Duane Deaver ("Agent Deaver"), who testified as a expert in bloodstain pattern analysis. In particular, Agent Deaver testified that Ms. Peterson was struck a minimum of four times with a blowpoke prior to falling down the stairs. Furthermore, Agent Deaver stated that, based on his bloodstain analysis, defendant attempted to clean up the scene, including his pants, prior to police arriving and that defendant was in close proximity to Ms. Peterson when she sustained her injuries.

After deliberating for nearly four days, the jury returned a verdict finding defendant guilty of first degree murder. The decision to find defendant guilty of homicide indicates that the jury relied heavily on the reliability and credibility of the State's witnesses and the conclusions they reached, particularly those of Agent Deaver. Defendant was sentenced to life in prison.

**STATE v. PETERSON**

[228 N.C. App. 339 (2013)]

On 14 February 2011, defendant filed a motion for appropriate relief ("MAR"), which is the subject of this appeal.[1] The matter came on for hearing before the Honorable Orlando F. Hudson, Jr., the judge who presided over defendant's criminal trial, on 6 December 2011 (the "MAR hearing"). The hearing lasted until 15 December 2011. At the end of the hearing, Judge Hudson announced in open court that defendant was entitled to a new trial. Judge Hudson indicated that the grounds for his decision were the following: (1) defendant proved that Agent Deaver misled the court; (2) defendant proved that Agent Deaver misled the jury; (3) Agent Deaver's false and misleading testimony was material; and (4) defendant was entitled to relief based upon *"newly-discovered evidence*, due process violations and for perjured testimony." In his written order filed 9 May 2012 ("MAR order"), the trial court concluded that, pursuant to N.C. Gen. Stat. § 15A-1415(b)(3), defendant was entitled to a new trial based on three types of evidence: (1) evidence concerning Agent Deaver's misrepresentations about his education, knowledge, training, and experience; (2) evidence of Agent Deaver's bias in favor of the prosecution; and (3) misrepresentations Agent Deaver made with regard to the scientific basis for and acceptability of his opinions, methods, and experiments. The State appealed.

### Grounds for the Order Granting Defendant's MAR

Initially, we must determine upon what grounds the trial court granted defendant's MAR since Judge Hudson's oral and written orders seem to indicate that they are based on different grounds. As noted, in open court, Judge Hudson stated that he was granting the MAR based on constitutional violations as well as newly discovered evidence. While a great deal of his written MAR order focuses on *Brady* violations, it also relies on evidence obtained after defendant's trial—specifically, information obtained in 2007 and 2010, well after defendant's trial, which could not serve as the basis for a *Brady* violation. Thus, it appears as though both grounds, *Brady* violations and newly discovered evidence, served as the basis for the trial court's decision to grant defendant a new trial.

### Grounds for Appeal

**[1]** The appealability of criminal judgments by the State, including trial court orders granting motions for appropriate relief, is governed by N.C.

---

1. Prior to defendant's 2011 MAR, defendant had also filed two earlier MARs—one in 2008 and one in 2009. Both of these earlier MARs were denied by Judge Hudson. We note that they did not address the specific issues related to Agent Deaver raised by the MAR which is the subject of this appeal.

Gen. Stat. § 15A-1445 (2011). Pursuant to N.C. Gen. Stat. § 15A-1445, the State may appeal an order granting a motion for a new trial "on the ground of newly discovered or newly available evidence but only on questions of law." Accordingly, because the trial court granted defendant's MAR based, in part, on newly discovered evidence, the State had the right to appeal the MAR order. We note that the State, in case we found that the MAR order was based solely on *Brady* violations, filed a petition for writ of *certiorari*. Since *certiorari* is not necessary to confer jurisdiction on this Court, we dismiss the State's petition.

### Standard of Review

[2] Our review of a trial court's ruling on a defendant's MAR is "whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982); *see also State v. Frogge*, 359 N.C. 228, 240, 607 S.E.2d 627, 634 (2005). "The decision of whether to grant a new trial in a criminal case on the ground of newly discovered evidence is within the trial court's discretion and is not subject to review absent a showing of an abuse of discretion." *State v. Stukes*, 153 N.C. App. 770, 773, 571 S.E.2d 241, 244 (2002) (quoting *State v. Wiggins*, 334 N.C. 18, 38, 431 S.E.2d 755, 767 (1993)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

### Arguments

### I. Granting the MAR

[3] The State contends that defendant was not entitled to a new trial because defendant failed to establish all of the prerequisites needed to prevail on a motion for appropriate relief based on newly discovered evidence. We disagree.

A motion for appropriate relief must be based on the grounds listed in N.C. Gen. Stat. 15A-1415 (2011). This statute provides, in pertinent part, that:

> [A] defendant at any time after verdict may by a motion for appropriate relief, raise the ground that evidence is available which was unknown or unavailable to the defendant at the time of trial, which could not with due diligence have been discovered or made available at that time, including recanted testimony, and which has a direct and material

> bearing upon the defendant's eligibility for the death penalty or the defendant's guilt or innocence. A motion based upon such newly discovered evidence must be filed within a reasonable time of its discovery.

N.C. Gen. Stat. § 15A-1415(c). To prevail on a motion for appropriate relief based on newly discovered evidence, a defendant must establish the following:

> (1) that the witness or witnesses will give newly discovered evidence, (2) that such newly discovered evidence is probably true, (3) that it is competent, material and relevant, (4) that due diligence was used and proper means were employed to procure the testimony at the trial, (5) that the newly discovered evidence is not merely cumulative, (6) that it does not tend only to contradict a former witness or to impeach or discredit him, (7) that it is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail.

*State v. Hall,* 194 N.C. App. 42, 48-49, 669 S.E.2d 30, 35 (2008).

With regard to the first type of evidence the trial court cited as entitling defendant to a new trial, Agent Deaver's misrepresentations concerning his qualifications, we conclude that this newly discovered evidence meets all seven requirements.

At trial, Agent Deaver testified that he was hired by the SBI in 1985. He received training and supervision from senior SBI Agent Spittle. At the time of defendant's trial, Agent Deaver claimed that he had written approximately 200 reports involving bloodstain analysis in cases he investigated. Overall, Agent Deaver alleged he participated in 500 cases involving bloodstain analysis. Furthermore, he stated that he had personally investigated crime scenes involving alleged falls 15 times. Based on this proffered experience and training, despite numerous objections made by defendant and motions to exclude his testimony, the trial court allowed Agent Deaver to testify as an expert witness in bloodstain pattern analysis.

At the MAR hearing, defendant presented a substantial amount of evidence establishing that Agent Deaver misrepresented his qualifications. Based on this evidence, the trial court found that: (1) Agent Deaver had not been mentored by Agent Spittle, contrary to Agent Deaver's testimony at trial; (2) Agent Deaver had only participated in 54 cases involving bloodstain analysis, not over 500; (3) Agent Deaver

only wrote 36 reports in cases involving bloodstain analysis, not 200; (4) before defendant's case in 2001, Agent Deaver had not conducted any bloodstain analysis at a potential crime scene since 1997; (5) Agent Deaver had not been qualified as an expert witness in bloodstain analysis 60 times; (6) Agent Deaver had never been to a potential crime scene involving an alleged accidental fall prior to the crime scene at defendant's house; and (7) although Agent Deaver testified that he "typically" performed bloodstain experiments, he had only done so in 3 cases other than defendant's. On appeal, the State does not contend that these findings are not supported by evidence. In fact, the State notes that these findings "arguably are supported by competent evidence." Moreover, the State did not present any evidence discrediting defendant's evidence at the hearing. Accordingly, we conclude that the trial court's findings are supported by evidence and are binding on appeal.

With regard to the first two requirements, that a witness or witnesses will provide newly discovered evidence and that the evidence is probably true, we find both are met. Numerous witnesses testified at the MAR hearing regarding Agent Deaver's misrepresentations about his qualifications and the manner in which this evidence was discovered after defendant's conviction, and this evidence was not contested by the State, either at the MAR hearing or on appeal.

Next, the evidence concerning Agent Deaver's qualifications was competent, material, and relevant. As stated, there was a substantial amount of evidence presented at the hearing supporting defendant's claim that Agent Deaver misrepresented his qualifications. Moreover, we conclude that this evidence is relevant and material in that it is logically related to issues at defendant's trial—specifically, Agent Deaver's testimony and, relatedly, his credibility. Thus, the evidence presented at the MAR hearing, which undermined that credibility, had a direct bearing to issues at trial.

Additionally, the record clearly establishes that defendant attempted to procure this testimony at trial. Over 600 pages of the trial transcript are devoted to Agent Deaver's *voir dire* at trial. Specifically, defendant attempted to impeach Agent Deaver's qualifications by asking about his supervision by SBI Agent Spittle, his coursework in bloodstain analysis, his accreditations by professional associations, and whether he had undergone any proficiency testing in serology. In fact, defendant attempted to test Agent Deaver's own knowledge of bloodstains on the stand by showing him pictures of different bloodstain patterns. During *voir dire*, defendant specifically argued to Judge Hudson that he did not believe that Agent Deaver was qualified to give opinions concerning

blood spatter. As noted, despite this *voir dire* and numerous objections to Agent Deaver's testimony at trial, the trial court still allowed Agent Deaver to testify as an expert witness.

Next, we find that the evidence concerning Agent Deaver's qualifications is not cumulative because defendant was unable to demonstrate this evidence at trial. The State seems to contend that because defendant attempted to impeach Agent Deaver at trial, any later new evidence concerning his misrepresentations would be cumulative. However, it is illogical to argue that this evidence is cumulative when defendant was unsuccessful in eliciting it at trial because of the witness's own false testimony.

Finally, with regard to the sixth and seventh elements, the State contends that "the evidence [relied upon by the trial court in granting defendant's MAR] tends only to impeach or discredit a former witness." Moreover, the State argues that this evidence did not affect "the ultimate opinion of homicide" and that the evidence of defendant's guilt was so overwhelming that this evidence would not have had a probable impact on the jury's verdict. We disagree.

While, generally, impeachment evidence, by itself, may be insufficient to warrant granting a defendant a new trial based on newly discovered evidence, this evidence constitutes much more than impeachment evidence. Due to the importance of Agent Deaver's testimony, the evidence concerning his qualifications would have completely undermined the credibility of the State's entire theory of the case. While the State offered other expert testimony concerning Ms. Peterson's death, the testimony of Agent Deaver was central to the State's case. He was the only witness to describe to the jury how he believed defendant killed his wife. Moreover, Agent Deaver was the only witness to testify that the bloodstains indicated that defendant had tried to not only clean up the scene but was also close to Ms. Peterson at the time she sustained injuries. Thus, because his testimony was crucial and necessary to the jury's verdict of murder, evidence of his misrepresentations goes well beyond simply impeaching a single witness.

We also conclude that it is probable that this evidence concerning Agent Deaver's qualifications would cause a jury to reach a different result at another trial. As discussed, while we recognize that Agent Deaver was not the only witness to testify for the State, we find that the importance of his testimony was such that, had it been undermined, the jury would probably not have unanimously agreed on a guilty verdict based on this evidence.

Based on the foregoing reasons, we find that the evidence concerning Agent Deaver's qualifications met all the requirements stated in *Hall*, 194 N.C. App. at 48-49, 669 S.E.2d at 35, to support the award of a new trial. Consequently, we hold that the trial court's order granting defendant a new trial based on this newly discovered evidence was manifestly supported by reason, and we affirm the trial court's order with regard to this issue. Accordingly, as we have found that the newly discovered evidence of Agent Deaver's qualifications entitles defendant to a new trial, it is not necessary for us to address the other two bases upon which the trial court granted relief—specifically, Agent Deaver's bias and his experiments and opinions—or reach the issue of whether any *Brady* violations occurred at trial.

## II. Remand for a New MAR Hearing

[4] Next, the State argues that if the Court does not reverse the MAR order, it should, in the alternative, remand this case for a new hearing. Specifically, the State contends that the trial court's failure to allow the State to ask specific questions of defendant's experts and the trial court's granting of defendant's motion in limine regarding specific experts the State intended to call constituted error. We disagree.

"Motions for appropriate relief generally allow defendants to raise arguments that could not have been raised in an original appeal, such as claims based on newly discovered evidence and claims based on rights arising by reason of later constitutional decisions announcing new principles or changes in the law." *State v. Riley*, 137 N.C. App. 403, 407, 528 S.E.2d 590, 593 (2000) (quoting *State v. Price*, 331 N.C. 620, 630, 418 S.E.2d 169, 174 (1992), *judgment vacated on other grounds*, 506 U.S. 1043, 122 L. Ed. 2d 113 (1993)). At the MAR hearing, the State attempted to call expert witnesses, who did not testify at defendant's original trial, to present testimony that Ms. Peterson was murdered. In other words, the State was trying to collaterally establish that the jury would have reached the same verdict based on evidence not introduced at trial. The trial court properly excluded this evidence because it was beyond the scope of the MAR hearing. Defendant's newly discovered evidence concerned Agent Deaver, arguably, the State's most important expert witness. Thus, the State could have offered its own evidence regarding Agent Deaver's qualifications, lack of bias, or the validity of his experiments and conclusions. Furthermore, the State was properly allowed to argue that the evidence at trial was so overwhelming that the newly discovered evidence would have no probable impact on the jury's verdict. However, the State may not try to minimize the impact of this newly discovered evidence by introducing evidence not available to the

jury at the time of trial. Thus, the trial court did not err in prohibiting the introduction of this evidence at the MAR hearing.

## Conclusion

With regard to Agent Deaver's misrepresentations about his qualifications, this newly discovered evidence met all requirements to warrant granting defendant's MAR and ordering a new trial, so we affirm the trial court's order on this issue. Based on this conclusion, it is not necessary for us to address the other two bases upon which the trial court granted the MAR or determine whether any *Brady* violations occurred at trial. Finally, we conclude that the trial court did not err in excluding evidence at the MAR hearing that the State attempted to introduce concerning Ms. Peterson's cause of death.

AFFIRMED.

Judges STROUD and ERVIN concur.